697 S.E.2d 671

**M. Lee JENNINGS, Appellant,**

v.

**Gail M. JENNINGS, Holly Broome, Brenda Cooke, Individually, and BJR International Detective Agency, Inc., Respondents.**

No. 4711.

Court of Appeals of South Carolina.

Heard April 15, 2010.

Decided July 14, 2010.

Rehearing Denied Aug. 27, 2010.

192

Max N. Pickelsimer and Carrie A. Warner, both of Columbia, for Appellant.

Deborah Harrison Sheffield, Richard Giles Whiting, Gary W. Popwell, Jr. and John K. Koon, all of Columbia, for Respondents.

GEATHERS, J.

In this appeal, M. Lee Jennings (Husband) contends that the circuit court erred by granting Respondents' motions for summary judgment as to his cause of action for a violation of the Stored Communications Act, 18 U.S.C. §§ 2701–2712 (2006). Husband also argues that the circuit court erred by denying his motion to amend his complaint to add Thomas Neal (Neal) as a party defendant. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS/PROCEDURAL HISTORY

On June 21, 2006, Husband's wife, Gail Jennings (Wife), discovered a card for flowers in her car. Suspecting the flowers were not for her, Wife questioned Husband, who had recently borrowed her car, about the card. To Wife's dismay, Husband informed Wife that he had bought the flowers for another woman, with whom he had fallen in love. Although Husband refused to tell Wife the woman's full name, he mentioned that he had been corresponding with her via email at his office. That same day, the couple separated.

A few days later, Wife's daughter-in-law, Holly Broome (Broome), visited Wife at her home. Wife, who was extremely upset, told Broome about the separation and the conversation she had had with Husband. The next day, Broome, who had previously worked for Husband, logged onto Husband's Yahoo account from her personal computer by changing Husband's password. Broome proceeded to read emails that had been sent between Husband and his girlfriend. After reading a few of the emails, Broome called Wife, who came over to Broome's home. Broome printed the emails, and she and Wife made copies of them. They then gave one set of the emails to Neal, Wife's divorce attorney, and another set to Brenda Cooke

(Cooke), a private investigator from the BJR International Detective Agency, Inc. (BJR) whom Wife had hired.

Broome subsequently logged onto Husband's Yahoo account on five or six additional occasions. Information she obtained about Husband's girlfriend as a result was communicated to Neal and Cooke. According to Broome, she never accessed any of Husband's unopened emails.

On June 29, 2006, Wife initiated an action in family court for divorce and separate support and maintenance. During the course of that litigation, which is still pending, Husband learned that Broome had accessed emails from his Yahoo account and that copies of those emails had been disseminated to Cooke and BJR.

In February 2007, Husband commenced this action against Wife, Broome, Cooke, and BJR, alleging causes of action for invasion of privacy (publicizing of private affairs and wrongful intrusion), conspiracy to intercept and disseminate private electronic communications, and violation of the South Carolina Homeland Security Act, S.C.Code Ann. §§ 17–30–10 to –145 (Supp.2009) (HSA). The parties filed cross-motions for summary judgment in May 2007.

In June 2007, Husband filed a motion to amend his complaint, which was granted pursuant to a Consent Order to Amend issued July 13, 2007. Later that July, Husband filed his amended complaint, adding allegations of violations of the following statutes: (i) the South Carolina Computer Crime Act (CCA), S.C.Code Ann. §§ 16–16–10 to –40 (2003 & Supp.2009); (ii) Title I of the Federal Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2510–2522 (2006); and (iii) Title II of the ECPA, 18 U.S.C. §§ 2701–2712 (2006), which is separately known as the Stored Communications Act (SCA).

In February 2008, Wife and Broome each moved again for summary judgment. Thereafter, Husband filed a motion to amend his complaint a second time. Among other things, Husband sought to add Neal as a party defendant.

A hearing regarding the parties' summary judgment motions and Husband's motion to amend his complaint was held in June 2008. At that hearing, Husband voluntarily withdrew

his causes of action arising under the HSA, the CCA and Title I of the ECPA, as well as his cause of action for conspiracy.

By an order filed September 24, 2008, the circuit court granted Respondents' motions for summary judgment as to Husband's remaining causes of action, and it denied Husband's motion to amend his complaint. With regard to Husband's claim under section 2701 of the SCA, the circuit court held that Husband had failed to allege all of the elements necessary for a cause of action. Additionally, the circuit court found that Husband was not entitled to relief under section 2701 because the emails at issue were not in "electronic storage" as that term is defined in 18 U.S.C. § 2510(17) (2006). Furthermore, the circuit court ruled that, even if the emails were in electronic storage, Husband could not recover against Wife or Cooke because their actions did not constitute a violation of section 2701.

Husband subsequently filed a motion to reconsider, which was denied by the circuit court. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in granting Respondents' motions for summary judgment on Husband's cause of action for a violation of the SCA on the ground that Husband failed to allege all of the elements necessary to successfully plead a cause of action under 18 U.S.C. § 2701 (2006)?

2. Did the circuit court err in granting Respondents' motions for summary judgment on Husband's cause of action for a violation of the SCA on the ground that the emails were not in "electronic storage" as defined in 18 U.S.C. § 2510(17) (2006)?

3. Did the circuit court err by not allowing Husband to amend his complaint to add Neal as a party defendant?

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the trial court under Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n. 2, 677 S.E.2d 612, 614 n. 2 (Ct.App.2009). Rule 56(c),

SCRCP, provides that summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ascertaining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Belton v. Cincinnati Ins. Co.*, 360 S.C. 575, 578, 602 S.E.2d 389, 391 (2004).

A motion to amend a pleading is normally addressed to the sound discretion of the trial court. *Porter Bros., Inc. v. Specialty Welding Co.*, 286 S.C. 39, 41, 331 S.E.2d 783, 784 (Ct.App.1985). The trial court's decision will not be over-turned "without an abuse of discretion or unless manifest injustice has occurred." *Berry v. McLeod*, 328 S.C. 435, 450, 492 S.E.2d 794, 802 (Ct.App.1997). The discretion afforded to the trial court in granting or denying an amendment "is so broad that it will rarely be disturbed on appeal." *Porter Bros.*, 286 S.C. at 41, 331 S.E.2d at 784.

## DISCUSSION

**I. Did the circuit court err in determining that Husband failed to allege all of the elements of a cause of action under section 2701 of the SCA?**

Section 2701(a) of the SCA provides:

Except as provided in subsection (c) of this section whoever—

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

*and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system* shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a) (2006) (emphasis added).

█ Husband contends that the circuit court erred by determining that he failed to allege all of the elements of a cause of action under Section 2701. We agree.

 Here, the circuit court held that the allegations in Appellant's complaint were "fatally incomplete" because Appellant failed to specifically contend that Respondents "obtain[ed], alter[ed], or prevent[ed] authorized access to a wire or electronic communication while it [was] in electronic storage." Because the circuit court's ruling focused upon Appellant's complaint, it appears that the circuit court treated Respondents' motions for summary judgment as motions to dismiss under Rule 12(b)(6), SCRCP.[1] However, the requirements for granting summary judgment are obviously different than the requirements for granting a Rule 12(b)(6) motion to dismiss. For instance, in ruling on a Rule 12(b)(6) motion, the court is confined to the complaint. *See Berry*, 328 S.C. at 441, 492 S.E.2d at 797 ("A Rule 12(b)(6) motion to dismiss for failure to state a cause of action must be resolved by the trial judge based *solely* on the allegations established in the complaint.") (emphasis added). In contrast, in ruling on a summary judgment motion, "a court must consider *everything* in the record-pleadings, depositions, interrogatories, admissions on file, affidavits, etc." *Gilmore v. Ivey*, 290 S.C. 53, 58, 348 S.E.2d 180, 183 (Ct.App.1986).

In the present case, Husband introduced evidence showing that Broome logged onto Husband's Yahoo email account without authorization by changing Husband's password. He also presented evidence that Broome, without Husband's consent, read and printed emails that were stored in Husband's Yahoo email account. Importantly, at least one court has held

---

1. Rule 12(b)(6), SCRCP, provides that "failure to state facts sufficient to constitute a cause of action" is a defense in a civil action. Here, there is no evidence in the record that any of the Respondents filed a motion to dismiss pursuant to Rule 12(b)(6), SCRCP. Moreover, even if Respondents had done so, the circuit court's consideration of matters outside of the pleadings would have converted such a motion into a summary judgment motion. *See* Rule 12(b), SCRCP ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state facts sufficient to constitute a cause of action, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *Berry*, 328 S.C. at 441–42, 492 S.E.2d at 798 (holding that, by considering matters outside of the pleadings, the trial court converted a Rule 12(b)(6) motion to dismiss into a summary judgment motion).

that comparable proof was sufficient to withstand a summary judgment motion in a section 2701 action. *See Fischer v. Mt. Olive Lutheran Church, Inc.*, 207 F.Supp.2d 914, 924–26 (W.D.Wis.2002) (denying summary judgment to defendants in a cause of action for a violation of section 2701 where evidence was presented to show that defendants logged onto plaintiff's Hotmail account without authorization and printed plaintiff's emails). Because the circuit court was ruling on motions for summary judgment, it was required to consider the evidence presented by Husband. Accordingly, we conclude that the circuit court erred by granting summary judgment to Respondents based merely upon the fact that Husband failed to expressly allege in his complaint that Respondents "obtain[ed], alter[ed], or prevent[ed] authorized access to a wire or electronic communication while it [was] in electronic storage." *See* 18 U.S.C. § 2701(a) (2006).

## II. Did the circuit court err in holding that the emails were not in "electronic storage" as contemplated by 18 U.S.C. § 2510(17)?

By its terms, section 2701(a) applies only to communications that are in "electronic storage." *See* 18 U.S.C. § 2701(a) (2006). Section 2510(17) defines "electronic storage" as:

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an *electronic communication service* for purposes of *backup protection* of such communication.

18 U.S.C. § 2510(17) (2006) (emphasis added).[2] In the present case, Husband contends that the emails in question fell within subsection (B) of section 2510(17) and that the circuit court therefore erred by holding that the emails were not in "electronic storage."[3] We agree.

---

2. The definitions set forth in section 2510 have been incorporated into the SCA. *See* 18 U.S.C. § 2711(1) (2006).

3. Several courts have held that the application of subsection (A) of section 2510(17) is limited to communications that have not yet been accessed by their intended recipient. *See, e.g., In re DoubleClick, Inc. Privacy Litig.*, 154 F.Supp.2d 497, 512 (S.D.N.Y.2001) ("[I]t appears

In its decision, the circuit court held that the emails in question fell outside the scope of section 2510(17)(B) because: (i) they were not stored by an "electronic communication service" (ECS); and (ii) they were not stored "for purposes of backup protection." As discussed below, we find that the circuit court erred in reaching those conclusions.

## A. Were the emails stored by an ECS?

■ An ECS is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15) (2006). In the present case, the circuit court denied recovery to Husband based in part on its finding that "Plaintiff has not asserted or provided evidence from which to conclude he is an 'electronic communication service.' " Although we agree with the circuit court that Husband is not an ECS, the circuit court framed the issue incorrectly. Specifically, the circuit court should have addressed whether Yahoo was an ECS, rather than whether Husband was an ECS. Here, the emails in question were stored on servers operated by Yahoo. Therefore, the emails were stored "by" Yahoo. *See Quon v. Arch Wireless Operating Co., Inc.,* 529 F.3d 892, 901 (9th Cir.2008) ("By archiving the text messages on its server, Arch Wireless certainly was 'storing' the messages."), *rev'd on other grounds sub nom. City of Ontario v. Quon,* —— U.S. ——, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010). Although any emails stored by Husband on the hard drive of his computer would not be covered by the SCA,[4] in this case, Broome did not access the

that [section 2510(17)(A) ] is specifically targeted at communications temporarily stored by electronic communications services incident to their transmission—for example, when an email service stores a message until the addressee downloads it."); *United States v. Weaver,* 636 F.Supp.2d 769, 771 (C.D.Ill.2009) ("Because the emails here have been opened, they are not in temporary, intermediate storage incidental to electronic transmission."). Here, as noted above, Broome testified that she never accessed any of Husband's unopened emails.

4. *See, e.g., Hilderman v. Enea TekSci, Inc.,* 551 F.Supp.2d 1183, 1204–05 (S.D.Cal.2008) (holding that emails stored by employee on hard drive of company-issued laptop were not in "electronic storage" as contemplated by the SCA); *In re DoubleClick,* 154 F.Supp.2d at 511–13 (holding that computer programs known as "cookies" placed by inter-

emails in question from Husband's hard drive. Instead, she logged directly onto Yahoo's system and retrieved the emails from there. Accordingly, the relevant issue here is whether Yahoo constitutes an ECS.

Turning to that question, we hold that Yahoo is an ECS. Yahoo unquestionably provides its users with the ability to send or receive electronic communications. Any doubt regarding whether Yahoo constitutes an ECS is removed by the SCA's legislative history, which provides that "electronic mail companies are providers of electronic communication services." S. REP. NO. 99–541, at 14 (1986); *see also* H.R. REP. NO. 99–647, at 63 (1986), 1986 U.S.C.C.A.N. 3555, 3568. ("An 'electronic mail' service ... would be subject to Section 2701.").[5]

Wife, however, contends that Yahoo was acting as a "remote computing service" (RCS), rather than an ECS, at the time that the emails were accessed. RCS is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2) (2006).[6] The term refers to "the processing or storage of data by an off-site third party." *Quon,* 529 F.3d at 901; *see also* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It,* 72 Geo. Wash. L.Rev. 1208, 1213–14 (2004)

---

net advertising corporation on the hard drives of plaintiffs' computers were not in "electronic storage").

**5.** Federal courts have looked to legislative history such as House and Senate Reports in interpreting the SCA. *See, e.g., Fischer,* 207 F.Supp.2d at 925–26 (citing Senate Report); *In re Nat'l Sec. Agency Telecomms. Records Litig.,* 483 F.Supp.2d 934, 939 (N.D.Cal.2007) (citing House and Senate Reports). Additionally, in construing federal statutes, the South Carolina Supreme Court has reviewed congressional reports to glean legislative intent. *See White v. S.C. Tax Comm'n,* 253 S.C. 79, 85–86, 169 S.E.2d 143, 145–46 (1969) ("Clearly demonstrative of the intent and purpose of Congress in enacting what is now Code Section 2056(b)(4) is the following quotation from Senate Report No. 1013....").

**6.** An "electronic communications system" is "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(14) (2006).

(describing customers of RCS as those that "paid to have remote computers store extra files or process large amounts of data").

In the present case, it is questionable whether Yahoo was providing RCS with respect to the emails in question. For instance, in *Quon*, the Ninth Circuit held that Arch Wireless, a company providing text messaging services to the city of Ontario, was not an RCS and that Arch Wireless therefore violated the SCA when it disclosed to the city the contents of text messages sent by city employees. *Quon*, 529 F.3d at 900–03.[7] Nonetheless, even if Yahoo was acting as an RCS with respect to the emails at issue, there is no question that Yahoo was also acting as an ECS with regard to those same emails. Husband's account was still active, and Husband retained the ability to send (forward) any of the emails at issue to someone else. Notably, the House Report for the SCA indicates that, in such situations, the communications would still be protected under section 2701. *See* H.R.REP. No. 99–647, at 63 (1986) ("[T]o the extent that a remote computing service is provided through an Electric Communication Service, then such service is also protected [under section 2701].").

Because Yahoo was providing ECS with respect to the emails at issue, this case is distinguishable from *Flagg v. City of Detroit*, 252 F.R.D. 346 (E.D.Mich.2008), a case relied upon by Respondents. In that case, the court addressed whether text messages stored by a non-party service provider on behalf of the city of Detroit were discoverable in a civil action brought against the city. *Id.* at 347. The city claimed that disclosure of the text messages by the service provider was barred by section 2702(a) of the SCA, which prohibits RCS entities from knowingly divulging communications maintained on their systems and ECS entities from knowingly divulging communications that are in "electronic storage" on their sys-

---

7. This holding was not on review in the U.S. Supreme Court's recent *City of Ontario* decision in which the Court reversed a portion of *Quon*. *See City of Ontario*, —— U.S. ——, at ——, 130 S.Ct. 2619, 177 L.Ed.2d 216, at —— (noting that "[t]he petition for certiorari filed by Arch Wireless challenging the Ninth Circuit's ruling that Arch Wireless violated the SCA was denied"). Rather, the issue addressed in *City of Ontario* was whether the city violated the Fourth Amendment by reviewing the text messages. *Id.* at 2627.

tems. *Id.* at 349. The court disagreed with the city, finding that the service provider was acting as an RCS with respect to the text messages and that the city, as the "subscriber," could therefore give its consent to the disclosure of the messages under an exception set forth in section 2702(b)(3). *Id.* at 363.[8] The court gave the following explanation for its conclusion that the service provider was acting as an RCS:

[T]he ECS/RCS inquiry in this case turns upon the characterization of the service that SkyTel *presently* provides to the City, pursuant to which the company is being called upon to retrieve text messages from an archive of communications sent and received by City employees in years past using SkyTel text messaging devices.... SkyTel is no longer providing, and has long since ceased to provide, a text messaging service to the City of Detroit—the City, by its own admission, discontinued this service in 2004, and the text messaging devices issued by SkyTel are no longer in use.... The Court finds, therefore, that the archive maintained by SkyTel constitutes "computer storage," and that the company's maintenance of this archive on behalf of the City is a "remote computing service" as defined under the SCA.

*Id.* at 362–63.

Here, unlike the situation in *Flagg,* Yahoo was providing email services to Husband at the time the emails at issue were accessed. Accordingly, *Flagg* is distinguishable from the present case.

## B. Were the emails being stored "for purposes of back-up protection"?

As noted above, to fall within section 2510(17)(B), a communication must not only be stored by an ECS, it must also be

---

8. Section 2702(b)(3) provides: "A provider described in subsection (a) may divulge the contents of a communication ... with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." 18 U.S.C. § 2702(b)(3) (2006). Although, in *Flagg,* the city did not want to give its consent, the court concluded that the city, as a party to the action, was "both able *and obligated* to give its consent" so that the city could comply with a request for the production of the text messages under Rule 34 of the Federal Rules of Civil Procedure. 252 F.R.D. at 363 (emphasis added).

stored "for purposes of backup protection." In *Theofel v. Farey–Jones*, 359 F.3d 1066 (9th Cir.2004), the Ninth Circuit addressed whether previously delivered emails held by an internet service provider (ISP) were stored "for purposes of backup protection" as contemplated by section 2510(17)(B). The court concluded that they were, explaining:

> An obvious purpose for storing a message on an ISP's server after delivery is to provide a second copy of the message in the event that the user needs to download it again—if, for example, the message is accidentally erased from the user's own computer. The ISP copy of the message functions as a "backup" for the user. Notably, nothing in the Act requires that the backup protection be for the benefit of the ISP rather than the user. Storage under these circumstances thus literally falls within the statutory definition.

*Id.* at 1075.

■ Like the Ninth Circuit, we believe that one of the purposes of storing a backup copy of an email message on an ISP's server after it has been opened is so that the message is available in the event that the user needs to retrieve it again. In the present case, the previously opened emails were stored on Yahoo's servers so that, if necessary, Husband could access them again. Accordingly, we hold that the emails in question were stored "for purposes of backup protection" as contemplated by section 2510(17)(B).

Respondents nonetheless contend that, because Husband has not claimed that he saved the emails anywhere else, the storage of his emails could not have been for the purposes of backup protection. However, courts interpreting section 2701 have issued rulings that would seem to allow Husband's cause of action in this case. *See Cardinal Health 414, Inc. v. Adams*, 582 F.Supp.2d 967, 976 (M.D.Tenn.2008) ("[W]here the facts indisputably present a case of an individual logging onto another's e-mail account without permission and reviewing the material therein, a summary judgment finding of an SCA violation is appropriate."); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F.Supp.2d 548, 555 (S.D.N.Y. 2008) ("The majority of courts which have addressed the issue have determined that e-mail stored on an electronic communi-

cation service provider's systems after it has been delivered, as opposed to e-mail stored on a personal computer, is a stored communication subject to the SCA."); *Fischer,* 207 F.Supp.2d at 925–26 (rejecting argument that emails stored on Hotmail's system were not in "electronic storage").

Furthermore, we do not find Respondents' argument to be convincing. Under Respondents' construction of the SCA, the unauthorized access of a person's emails from an ECS would be unlawful if the person had previously saved his emails somewhere else, but would be perfectly lawful if the person had not done so. However, such an interpretation would lead to strange results. For instance, a person whose emails were stored solely with an ECS would generally suffer greater harm if someone "alter[ed]" or "prevent[ed] authorized access" to his ECS-stored emails than a person who had saved his emails in additional locations. Yet, under Respondents' construction of the SCA, only the person in the latter position would be protected. We do not believe that this was what Congress intended.

Indeed, the legislative history of the SCA supports the conclusion that Congress intended for the SCA to apply to the conduct Broome engaged in here. For instance, both the House and Senate Reports state that section 2701 "addresses the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public." H.R.REP. No. 99–647, at 62 (1986); S.REP. No. 99–541, at 35 (1986). Additionally, the Senate Report provides the following illustration of what conduct would constitute a violation of section 2701:

> For example, a computer mail facility authorizes a subscriber to access information in their portion of the facilities storage. Accessing the storage of other subscribers without specific authorization to do so would be a violation of [section 2701].

S.REP. No. 99–541, at 36. Here, Broome has admitted that she accessed and read, without authorization, Husband's emails that were stored on Yahoo's system. The legislative history of the SCA indicates that Congress intended that such conduct would constitute a violation of section 2701.

## C. Does the SCA apply to emails in a "post-transmission" state?

Respondents also argue for affirmance of the circuit court's decision on the ground that the emails in question were not in "electronic storage" as contemplated by section 2510(17) because they were in a "post-transmission" state. In making this argument, Respondents rely upon *Fraser v. Nationwide Mut. Ins. Co.*, 135 F.Supp.2d 623 (E.D.Pa.2001), *aff'd on other grounds*, 352 F.3d 107 (3rd Cir.2003). In *Fraser*, the court addressed whether an employer violated the SCA when it accessed emails of its employee that were stored on the employer's server. *Id.* at 632. The court held that there was no violation because the emails were in "post-transmission" storage, meaning that they had already been retrieved by the intended recipient. *Id.* at 636. The court concluded that the SCA "provides protection only for messages while they are in the course of transmission." *Id.*

 However, the district court's decision in *Fraser* was subsequently appealed to the Third Circuit, which affirmed on different grounds. *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107 (3rd Cir.2003). Specifically, the Third Circuit held that the employer's actions fell within the exception set forth in section 2701(c)(1) because the employer administered the email system and thus was acting as the ECS.[9] *Id.* at 114–15. Importantly, in reaching that result, the Third Circuit expressed skepticism regarding the district court's ruling that the emails were not in electronic storage, stating:

[A]ccording to the District Court, the e-mail was in a state it described as "post-transmission storage." We agree that Fraser's e-mail was not in temporary, intermediate storage. But to us it seems questionable that the transmissions were not in backup storage—a term that neither the statute nor the legislative history defines. Therefore, while we affirm the District Court, we do so through a different analytical

---

**9.** Section 2701(c)(1) provides: "Subsection (a) of this section does not apply with respect to conduct authorized ... by the person or entity providing a wire or electronic communications service." 18 U.S.C. § 2701(c)(1) (2006).

path, *assuming without deciding that the e-mail in question was in backup storage.*

*Id.* at 114 (emphasis added).

Moreover, in *Theofel,* the Ninth Circuit declined to follow the district court's holding in *Fraser,* reasoning:

> In contrast to subsection (A), subsection (B) [of section 2510(17) ] does not distinguish between intermediate and post-transmission storage. Indeed, *Fraser*'s interpretation renders subsection (B) essentially superfluous, since temporary backup storage pending transmission would already seem to qualify as "temporary, intermediate storage" within the meaning of subsection (A). *By its plain terms, subsection (B) applies to backup storage regardless of whether it is intermediate or post-transmission.*

*Theofel,* 359 F.3d at 1075–76 (emphasis added). Similarly, in *Quon v. Arch Wireless Operating Co., Inc.,* 309 F.Supp.2d 1204 (C.D.Cal.2004), the court rejected the contention that the SCA did not apply to emails in a "post-transmission" state, explaining: "Part (B) [of section 2510(17) ] states that the storage must be 'for the purpose of backup protection.' Backup protection clearly may be needed after transmission." *Id.* at 1208. For the foregoing reasons, we decline to follow the district court's decision in *Fraser.*

Respondents further claim that the legislative history of the SCA supports their position. Specifically, they point to a section of the applicable House Report that states that email messages stored by an RCS should "continue to be covered by section 2702(a)(2)" if left on the server after they were accessed by the user. *See* H.R. REP. No. 99–647, at 65 (1986). Respondents appear to contend that this passage demonstrates that Congress intended for opened emails to be covered under section 2702(a)(2), as opposed to section 2701. In *Theofel,* the Ninth Circuit rejected a similar argument, explaining:

> The cited discussion [from the House Report] addresses provisions relating to remote computing services. We do not read it to address whether the electronic storage provisions also apply. The committee's statement that section 2702(a)(2) would "continue" to cover e-mail upon access supports our reading. If section 2702(a)(2) applies to e-mail

even before access, the committee could not have been identifying an exclusive source of protection, since even the government concedes that unopened e-mail is protected by the electronic storage provisions.

359 F.3d at 1077 (citations omitted).

We agree with the Ninth Circuit's analysis in *Theofel.* In our view, it would be too much of a stretch to conclude that the above-referenced passage from the House Report demonstrates that Congress did not intend for section 2701 to apply to opened emails.

### D. Did the circuit court err by granting summary judgment to Wife, Cooke, and BJR?

Alternatively, Wife, Cooke and BJR contend that, even if the emails were in "electronic storage," the circuit court's grant of summary judgment as to them should be affirmed because they did not engage in a violation of section 2701. We agree.

In its order granting summary judgment to Respondents, the circuit court held that "regardless of this Court's findings as to whether any violation of 18 USC § 2701 occurred, Plaintiff cannot obtain any relief or recovery against Defendant Jennings or Defendant Cooke, as Defendant Jennings and Defendant Cooke are not persons who potentially engaged in such alleged violation." Because Husband has not specifically challenged that ruling, it is the law of the case and requires affirmance. *See Buckner v. Preferred Mut. Ins. Co.,* 255 S.C. 159, 160–61, 177 S.E.2d 544, 544 (1970) (holding that an unappealed ruling is the law of the case).

Moreover, we conclude that the circuit court's ruling on this issue was not erroneous. As noted above, Husband claims that Respondents violated section 2701. In order to violate section 2701, a person or entity must, among other things, intentionally access without authorization, or intentionally exceed an authorization to access, a facility through which an electronic communication service is provided. *See* 18 U.S.C. § 2701(a) (2006). Civil causes of action for violations of the SCA may be brought pursuant to section 2707(a), which provides:

Except as provided in section 2703(e), any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, *which engaged in that violation* such relief as may be appropriate.

18 U.S.C. § 2707(a) (2006) (emphasis added).

Importantly, section 2707 extends civil liability only to "the person or entity ... which engaged in [the] violation." 18 U.S.C. § 2707(a) (2006); *Tucker v. Waddell,* 83 F.3d 688, 691 (4th Cir.1996). Here, there is no evidence that Wife, Cooke, or BJR accessed Husband's email account. Although Wife disclosed some of Husband's emails to Cooke and BJR, who allegedly used the emails to obtain additional information about Husband's affair, the SCA does not punish such conduct. *See Cardinal Health,* 582 F.Supp.2d at 976 ("While [the] SCA punishes the act of accessing a 'facility through which an electronic communication service is provided' in an unauthorized manner, the SCA does not punish disclosing and using the information obtained therefrom."). Accordingly, the circuit court did not err by granting summary judgment to Wife, Cooke, and BJR. *See Fischer,* 207 F.Supp.2d at 926 (granting summary judgment to defendants who did not access plaintiff's email accounts); *Cardinal Health,* 582 F.Supp.2d at 977–79 (same); *see also Freeman v. DirecTV, Inc.,* 457 F.3d 1001 (9th Cir.2006) (holding that civil liability under section 2707 does not extend to those who aid, abet, or conspire with a person or entity engaging in a violation of section 2702); *Doe v. GTE Corp.,* 347 F.3d 655 (7th Cir.2003) (holding that an ISP was not liable under sections 2511 and 2520 of the ECPA for aiding and abetting defendants who intercepted and disclosed oral communications).

### III. Did the circuit court err by denying Husband's motion to amend his complaint to add Neal as a party defendant?

Finally, Husband contends that the circuit court erred by not allowing him to amend his complaint a second time to add Neal as a party defendant. We disagree.

Rule 15(a), SCRCP, sets forth the standard for granting motions to amend a pleading. It provides in pertinent part:

A party may amend his pleading once as a matter of course at any time before or within 30 days after a responsive pleading is served or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial roster, he may so amend it at any time within 30 days after it is served. *Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires and does not prejudice any other party.*

Rule 15(a), SCRCP (emphasis added). Although leave to amend should generally be "freely given," this court has held that it may be denied where the proposed amendment would be futile. *See Higgins v. Med. Univ. of S.C.,* 326 S.C. 592, 604–05, 486 S.E.2d 269, 275 (Ct.App.1997).

■ Here, Husband has not alleged that Neal accessed Husband's email account. Therefore, because liability under the SCA extends only to those who actually engaged in a violation of that act, adding Neal as a party defendant would have been futile. Like Wife, Cooke, and BJR, Neal would have been entitled to summary judgment if he had been added as a defendant. Accordingly, we conclude that the circuit court did not err in refusing to grant Husband leave to amend his complaint to add Neal as a party defendant.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's grant of summary judgment as to Wife, Cooke, and BJR, as well as the circuit court's denial of Husband's motion to amend his complaint to add Neal as a party defendant. Additionally, we reverse the circuit court's grant of summary judgment as to Broome and remand the case for further proceedings. Accordingly, the circuit's court's decision is

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

PIEPER, J., and CURETON, A.J., concur.